UNITED STATES of America et al.

v.

Bernard W. FENSTERWALD,
Jr., partner.

Appeal of FENSTERWALD AND
OHLHAUSEN PARTNERSHIP.

No. 76–1290.

United States Court of Appeals,
District of Columbia Circuit.

Argued 15 Feb. 1977.

Decided 8 March 1977.

Bernard Fensterwald, Jr., appellant, pro se.

Daniel F. Ross, Atty., Dept. of Justice, Washington, D. C., with whom Scott P. Crampton, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., Robert E. Lindsay, Atty., Dept. of Justice, and Derek I. Meier, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellees.

Before WRIGHT, LEVENTHAL and WILKEY, Circuit Judges.

PER CURIAM:

The factual allegations of appellant Fensterwald here have taken him out of the

class of the ordinary taxpayer, whose efforts at seeking discovery would, if allowed universally, obviously be too burdensome to the Internal Revenue Service. Cf. *United States v. Wright Motor Company, Inc.*, 536 F.2d 1090 (5th Cir., 1976, McCree, J.). Fensterwald has alleged, and it is not contradicted, that he as an attorney represented James McCord, one of the original seven Watergate defendants, at the time McCord made his revelations to District Judge Sirica which contributed so greatly to the judicial, congressional, and public knowledge of the Watergate conspiracy. Fensterwald also has represented at one time or another James Earl Ray and other well-known persons enmeshed in the toils of the criminal law. The taxpayer asserts that his representation of these prominent figures in controversial cases could have led to an extraordinary interest in this taxpayer by some people in the Executive Branch to whom these revelations were a great embarrassment, and that such persons in the Executive Branch were possessed of sufficient power to stir an interest in taxpayer Fensterwald by the Internal Revenue Service.

Like allegations are made by the taxpayer in regard to his prior service some years ago as chief counsel of the Senate committee which investigated alleged illegal activities of the Internal Revenue Service itself. It is a matter of public record that that Senate committee, under the chairmanship of Senator Long of Missouri, and with the assistance of Fensterwald as chief counsel, did produce evidence of asserted illegal activities of the Internal Revenue Service in the investigatory field and in other matters. The taxpayer alleges that he has knowledge of efforts at retaliation against him by prominent persons in the administration at that time (different from the administration in power at the time of the Watergate revelations), and that such efforts at retaliation could easily have spurred the Internal Revenue Service to take an extraordinary interest in this particular taxpayer, particularly since the revelations by the Senate Committee were damaging to the reputation of the IRS itself. The taxpayer points to the fact that somehow Senator Long's tax returns reached the hands of a national publication, they were published, and the political career of Senator Long of Missouri was destroyed. He cites this an example of an effort which could have been made either by individuals in the Internal Revenue Service or outside the Service in the administration at that time to retaliate against Senator Long, and that taxpayer (former chief counsel) Fensterwald could now be the target of a similar effort by different means, such as the alleged extraordinary harassing investigation here.[1]

We cite these allegations, which, aside from those matters of public record, as yet of course remain unproved, as support for our conclusion that clearly taxpayer Fensterwald has taken himself out of the category of an ordinary taxpayer challenging the good faith of the Internal Revenue Service in conducting a special audit. Under the circumstances alleged here, much of which is a matter of public record, it is clear that this particular taxpayer should have been permitted limited discovery as to how his name came to be selected for this special audit. The taxpayer initiated discovery by filing interrogatories directed to the IRS as the opposing party in his action brought in the District Court to quash the IRS summons. These interrogatories were not allowed by the District Judge. Without ourselves passing on the appropriateness of all questions contained in the interrogatories, we hold that the District Judge should allow some measure of discovery, preferably by specific interrogatories to be answered under oath by responsible and knowledgeable officials of the Internal Revenue Service, or perhaps by an overall affidavit made by a similar responsible and knowledgeable official as to all relevant details

---

1. The Government responds that since plaintiff has not been audited in the several years since his prior service, there is no substance to his complaint. The Watergate disclosures of "enemy list" possibilities in 1972 is at least one condition that emerged after some of the non-audit years. More important, we are not now concerned with the determination of the underlying facts as such.

of how taxpayer Fensterwald's name was selected for this audit.

The IRS claims that numerous taxpayers were selected for this special administrative audit (termed "Taxpayer Compliance Measurement Program," designed to test the accuracy of the customary, less intensive IRS audit procedures annually applied to a percentage of all taxpayers) entirely by chance as a result of computer selection. If this is so, it should be easy for the IRS to establish this fact by those persons who have knowledge of the procedure and who have access to and can produce for the court the printouts or other computer records which first turned up Fensterwald's name. For the purpose of this inquiry under discovery procedures deemed appropriate by the District Court, we remand the record in this case.